**C.A.U.T.I.O.N., LTD., etc.,
et al., Plaintiffs,**

v.

**The CITY OF NEW YORK,
et al. Defendants.**

No. 93 Civ. 4718 (LAK).

United States District Court,
S.D. New York.

Sept. 15, 1995.

Marjorie E. Berman, Leventhal Slade & Krantz, New York City, for Plaintiffs.

Gabriel Taussig, Lisa S.J. Yee, Assistant Corporation Counsel, Paul A. Crotty, Corporation Counsel of the City of New York, New York City, for Defendants.

## OPINION

KAPLAN, District Judge.

Parking summonses issued by officials of the City of New York (the "City") serve the primary purpose of enforcing parking regulations, thereby alleviating congestion in the traffic-clogged streets of the City. They also raise revenue. Plaintiffs, a group of small businesses that park their commercial vehicles on City streets, claim that the City and the other defendants have violated 42 U.S.C. § 1983 by focusing on the second goal at the expense of the fair administration of the first and thereby deprived them of their right to due process of law. Defendants now move under FED.R.CIV.P. 8 and 12(b)(6) to dismiss the Second Amended Complaint. Plaintiffs oppose the motion and cross-move, in the alternative, for leave to amend.

### Facts

*Parties and Procedural History*

This action was commenced by C.A.U.T.I.O.N., Ltd., also known as Contractors Against Unfair Taxation Instituted on New Yorkers ("CAUTION"), a non-profit corporation comprised of small to medium sized service businesses which use commercial vehicles in the City and allegedly have been subjected to undeserved summonses. The First Amended Complaint was dismissed with leave to replead certain of the allegations. *Contractors Against Unfair Taxation on New Yorkers v. City of New York*, 1994 WL 455553 (S.D.N.Y. Aug. 19, 1994) (Wood, J.). Plaintiffs on the Second Amended Complaint, the subject of this motion, are CAUTION and ten of its individual members. (Second Amended Complaint "Cpt" ¶¶ 6–16) Defendants are the City, the New York City Department of Transportation ("DOT"), the New York City Parking Violations Bureau ("PVB"), the New York City Department of Finance, the New York City Police Department, and seven present and former officials of these agencies. (*Id.* ¶¶ 17, 22) Plaintiff allege that all of these agencies play important roles in the parking violations system. (*Id.* ¶¶ 18–21) The four former officials—

Lucius Riccio, Norman Steisel, Joseph Spencer and Philip Michael—are sued in their individual capacities. The three present officials—Transportation Commissioner Sanders, Finance Commissioner and PVB Director Shaw, and Police Commissioner Bratton—appear to be sued in their official capacities.

*The New York City Parking Violations System*

Some years ago, the City responded to the overwhelming volume of alleged parking violations requiring disposition in the courts by creating an administrative agency, the PVB, to deal with parking summonses. *See Rosenthal v. Hartnett*, 36 N.Y.2d 269, 272–73, 367 N.Y.S.2d 247, 249, 326 N.E.2d 811, 813 (1975); *Voccola v. Shilling*, 88 *Misc.*2d 103, 106, 388 N.Y.S.2d 71, 74 (Sup.Ct.Kings Co.1976), *aff'd*, 57 A.D.2d 931, 394 N.Y.S.2d 577 (2d Dept.1977). The PVB is headed by a director who is appointed by the Commissioner of Finance. 4 N.Y.C. ADMIN.C. (hereinafter NYC AD.C.) §§ 19–200—19–201 (1989).

One accused of a parking violation is served with a notice of violation, commonly called a summons or parking ticket. *Id.* § 19–204. The recipient may plead guilty and pay the prescribed fine, or plead not guilty, by mail. If a plea of not guilty is entered, the PVB notifies the defendant of a hearing date. *Id.* § 19–206.

The director of the PVB appoints a number of hearing examiners, whose duties include presiding at hearings for the adjudication of charges of parking violations. *Id.* § 19–202. The relevant New York City enactment provides that the notice of violation is *prima facie* evidence of the facts stated therein [1] and that the hearing officers are not bound by the rules of evidence. NYC AD.C. §§ 19–204a., 19–206b.3. Subpoenas are available in the discretion of the hearing officer and, upon request of the respondent, upon "a showing of good cause and need therefor ..." N.Y.VEH. & TRAFFIC L. § 240, subd. 2d. (McKinney 1986); *accord*, NYC AD.C. § 19–206a.4.; 11 RULES OF THE CITY OF

---

1. Unlike many of the New York City provisions dealing with the adjudication of parking violation

charges, this *prima facie* evidence clause finds no counterpart in the State enabling legislation.

NEW YORK (hereinafter NYC RULES) § 3–08(h) (1995). No charge may be established except upon proof by "substantial" credible evidence. N.Y.VEH. & TRAFFIC L. §§ 235, 240, subd. 2b.; NYC AD.C. § 19–206b.2.; NYC RULES § 3–08(e); *Silverstein v. Appeals Board of the Parking Violations Bureau*, 100 A.D.2d 778, 474 N.Y.S.2d 60, 61 (1st Dept.), *leave to appeal denied*, 62 N.Y.2d 606, 482 N.Y.S.2d 1023, 472 N.E.2d 327 (1984).

A party convicted of a parking violation may appeal to an appeals bureau within the PVB, which consists of three or more hearing examiners. The service of a notice of appeal does not stay the enforcement of the judgment appealed from unless the appellant bonds or otherwise secures payment at or prior to the filing notice. NYC AD.C. § 19–208. Moreover, the PVB's rules provide that no appeal shall be permitted unless the fines and penalties assessed at the hearing have been paid or the respondent shall have posted security in the full amount of the final determination appealed from. NYC RULES § 3–12(b)(3). Orders of the appeal board may be reviewed in the New York State Supreme Court in proceedings under Article 78 of the Civil Practice Law and Rules.[2] NYC AD.C. § 19–209.

The New York City traffic regulations provide for the towing and impoundment of illegally parked vehicles in addition to the issuance of parking tickets. NYC RULES § 4–08(9). Once the parked vehicle is hooked to the tow truck, but before it is moved, the rules provide that the owner may obtain its release upon executing an agreement to pay a $75 vehicle release penalty within thirty days, this is addition to fines and penalties for the underlying parking violation. *Id.* § 4–08(9)(ix)–(x). After the vehicle is removed to the pound, the owner must pay a removal fee of $150 plus a storage fee of $5 per day prior to the release of the vehicle, *id.*

§ 4–08(9)(vi)–(vii), again presumably in addition to penalties for the parking violation.

*The Second Amended Complaint*

Plaintiffs claim, broadly speaking, that their vehicles are ticketed and towed by DOT and Police Department personnel irrespective of any lawful basis for such action, that the system of adjudicating parking violations run by the PVB is stacked against them, and that they have no meaningful avenue of appeal. The complaint contains five counts:

● Count I asserts that defendants' policies and practices result in the routine issuance of summonses against plaintiffs' vehicles despite the lack of any parking infraction. For example, the complaint alleges that the applicable rules and regulations permit parking of commercial vehicles without time limit in spaces marked "no standing except trucks loading and unloading," but that the defendants' custom and practice is to ticket vehicles parked in such areas without inquiry as to whether the vehicles are properly so parked. (*Id.* ¶ 36a)

● Count II alleges that defendants' policies and practices result in frequent seizure and towing of plaintiffs' vehicles despite the lack of any basis for such action. For example, City parking regulations exempt plaintiffs' vehicles from parking rules while responding to emergencies, but the City is alleged routinely to tow commercial vehicles thus engaged. (*Id.* ¶ 40a)

● Count III turns its attention to the PVB's adjudicatory system. PVB hearing examiners allegedly (a) sustain summonses simply on the basis of their issuance, (b) ignore "overwhelming evidence . . . disproving" summonses, (c) refuse requests to subpoena the officers or agents who served the summonses in question, and (d) apply an arbitrary three hour time limit in defining the

---

**2.** Given the volume of alleged parking violations in New York City, the operations of the PVB no doubt are computerized, and the human-machine interaction probably has led to any number of erroneous dunning letters and other demands for payment of tickets that either have been paid or related to charges that were dismissed. Perhaps for this reason, the Legislature in 1987 enacted legislation requiring the PVB to establish a "properly staffed complaint unit" to deal with claims that payment has been demanded, vehicles denied registration, or other action taken despite the prior payment of the fine which forms the basis of such action. N.Y.VEH. & TRAFFIC L. § 241–a.

term "expeditious" as used in a rule permitting parking in designated areas for "expeditious service calls, pickups and deliveries." (*Id.* ¶ 44–50)

● Count IV asserts that the appeal system in the PVB deprives plaintiffs of due process of law. The applicable rules provide thirty days within which to appeal from an adverse determination. The PVB, however, allegedly refuses to accept appeals absent proof of payment of the fine being contested. As canceled checks frequently are unavailable within thirty days of the determination, plaintiffs allege that they often are denied any opportunity to appeal. Moreover, they complain that even when they successfully appeal, the PVB refuses to refund the fine paid, applying it instead to outstanding summonses irrespective of whether those summonses have been sustained, dismissed or are merely pending. (*Id.* ¶ 52–57)

● Finally, Count V complains that defendants, in violation of municipal law, fail to keep complete and accurate records of all charges and dispositions, which results, *inter alia,* in the seizure of vehicles for allegedly outstanding summonses that have been paid, the improper entry of default judgments, and other penalties. (*Id.* ¶ 59)

Plaintiffs claim that all of the foregoing is the product of defendants' explicit pressure on enforcement personnel and hearing examiners to generate revenue by misusing their power and of their alleged indifference in failing properly to train those charged with the day to day operation of the system.

The complaint does not point to a single particular instance of alleged misconduct by any parking official. Rather, it is framed in general terms, and the only particular harm alleged is that nine out of the ten individual members of CAUTION named as plaintiffs allege that 75 percent of the summonses issued against them are unlawful. (*Id.* ¶ ¶ 7–8, 10–16)

### Discussion

Defendants move to dismiss on the grounds that the complaint fails to state its

claims with sufficient particularity and that it fails to state a claim on which relief may be granted. Before reaching defendants' contentions, the Court must consider whether CAUTION has standing to bring this action.

### Standing

▮ The jurisdiction of the federal courts is limited by Article III of the Constitution to "cases and controversies"—disputes in which the parties have both adverse interests and stakes in the resolution sufficient to sharpen the issues and ensure proper disposition. As the existence of such interests, referred to as standing, goes to the jurisdiction of the Court, the Court is bound to consider the issue even where, as here, the parties have not. *E.g., FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 230–32, 110 S.Ct. 596, 607–09, 107 L.Ed.2d 603 (1990); *Hodel v. Irving,* 481 U.S. 704, 711–12, 107 S.Ct. 2076, 2080–81, 95 L.Ed.2d 668 (1987); *Juidice v. Vail,* 430 U.S. 327, 331–32, 97 S.Ct. 1211, 1215–16, 51 L.Ed.2d 376 (1977). In consequence, the Court must determine at the outset whether CAUTION has standing to bring this action.

▮ CAUTION does not allege injury to itself as a result of defendants' alleged actions, suing instead in the interests of its members. In consequence, its standing depends on whether (1) its members otherwise would have standing to sue in their own right, (2) the interests it seeks to protect are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires participation of individual members in the lawsuit. *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977).

The first and second prongs of the *Hunt* test are satisfied here. Proper adjudication of CAUTION's claim, however, will require the individual members to participate in the action. Plaintiffs allege that City officials have a policy or practice that violates the Fourteenth Amendment which, if plaintiffs are correct, would be actionable under Section 1983 pursuant to *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Proof of the existence of a policy or practice

will require proof of more than one instance of official misconduct consistent with the policy or practice. *See Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993). Only the individual members of CAUTION will be able to show individual instances of misconduct here, and they therefore will have to participate in the suit. *See, e.g., Rent Stabilization Association v. Dinkins,* 5 F.3d 591 (2d Cir.1993) (necessity of individual participation to determine merits of takings claim deprives organization of standing). In consequence, CAUTION has no standing and may not act here as surrogate for its individual members. The complaint, insofar as it is brought on behalf of CAUTION, is dismissed.

### Pleading with Particularity

■ The principal thrust of the City's motion is the assertion that the *Monell* claim is not pleaded with sufficient particularity and thus violates FED.R.CIV.P. 8. The gravamen of defendants' challenge is that the complaint allegedly does not allege more than one incident of misconduct in support of its policy or practice claim—indeed, it does not allege even one particular incident.

The City's position lacks merit. Rule 8(a)(2) requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." The statement must be sufficient "to give the defendant fair notice of what plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). The Supreme Court recently held, moreover, that Rule 8 applies to *Monell* claims against municipalities and their agencies. *Leatherman v. Tarrant County Narcotics Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). The fundamental question, therefore, is whether the complaint sufficiently alleges that a policy exists.

The complaint plainly does so, even under the more stringent standard applied in this Circuit before *Leatherman. See, e.g., Dwares,* 985 F.2d at 100. Plaintiffs allege extensive improprieties. Reading the pleading generously in plaintiffs' favor, it certainly would permit proof of many instances of misconduct consistent with the alleged policy.

Plaintiffs have satisfied Rule 8 with respect to the *Monell* claim.

■ Defendants next argue that the complaint must satisfy a more stringent standard in order to state a claim against the former officials sued in their individual capacities, who might assert a qualified immunity defense. Other circuits have adopted a heightened pleading standard for Section 1983 claims against individual officers on the theory that immunity is designed to protect officers not just from ultimate liability, but from litigation itself. *See Crawford-El v. Britton,* 951 F.2d 1314 (D.C.Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 62, 121 L.Ed.2d 29 (1992); *Dominque v. Telb,* 831 F.2d 673 (6th Cir.1987); *Elliott v. Perez,* 751 F.2d 1472 (5th 1985). However, the issue has been left open by the Supreme Court, *see Leatherman,* 507 U.S. at ——, 113 S.Ct. at 1162, and the theory that the complaint must plead facts sufficient to disprove qualified immunity has been rejected in this Circuit. *Castro v. United States,* 34 F.3d 106, 111 (2d Cir.1994).

### The Legal Sufficiency of Plaintiffs' Claims

The Court comes, then, to defendants' challenge to the legal sufficiency of plaintiffs' claims.

### Baseless Ticketing

■ Plaintiffs assert first that police officers and parking enforcement agents regularly ticket their vehicles despite the lack of any colorable basis for doing so and that this conduct occurs in consequence of pressure by high City officials to increase revenues by issuing summonses. They contend that this violates their rights to substantive and procedural due process. The essence of the claim is analogous to the common law torts of malicious prosecution and abuse of process. *See, e.g., Cook v. Sheldon,* 41 F.3d 73, 78–79 (2d Cir.1994); W. KEETON, D. DOBBS, R. KEETON & D. OWEN, PROSSER & KEETON ON THE LAW OF TORTS §§ 119–21 (5th ed. 1984) (hereinafter "PROSSER").

The circumstances in which malicious prosecution and other common law torts give rise also to constitutional claims cognizable under Section 1983 have been much litigated. In

*Albright v. Oliver,* —— U.S. ——, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), however, the Supreme Court held that a constitutional claim based on malicious prosecution by state actors cannot be grounded in substantive due process. Accordingly, Count I, to the extent it seeks relief on a substantive due process theory, must be dismissed.

██ *Albright* leaves open the possibility that conduct akin to malicious prosecution under state law may give rise also to a constitutionally based claim, albeit one based on a constitutional theory other than substantive due process. Indeed, three Justices would have based such a claim on procedural due process while a fourth expressed the view that a constitutional malicious prosecution tort might be grounded in the Fourth Amendment. —— U.S. at ——, 114 S.Ct. at 814 (Scalia, J., concurring); *id.,* at ——, 114 S.Ct. at 822 (Stevens and Blackmun, JJ., concurring); *id.,* at ——, 114 S.Ct. at 815 n. 1 (Ginsburg, J., concurring).

The constitutional underpinning of any such claim is important in consequence of the *Parratt–Zinermon* line of cases,[3] which in some circumstances limits procedural due process claims depending on available state remedies. If the claim rests on procedural due process alone, it lies only if state remedies are inadequate or the *Zinermon* test is satisfied. On the other hand, if the claim is based on the Fourth Amendment or another constitutional guarantee,[4] these limitations would not apply. But this Court need not determine at this point the precise basis for the constitutional analog to the tort of malicious prosecution, as *Zinermon* is satisfied as a matter of pleading.

*Zinermon* distinguished *Parratt* and another case in which the Court had found that procedural due process requirements were satisfied by the existence of remedies after the alleged deprivation of liberty or property had occurred. It holds that the existence of state remedies will not preclude procedural due process claims where (1) the risk of the deprivation complained of was foreseeable to the State, (2) the State might have reduced that risk either through additional predeprivation safeguards or by limiting the defendants' discretion in implementing established procedures, and (3) the defendants are authorized by the State to implement the requisite safeguards. 494 U.S. at 136–37, 110 S.Ct. at 989–90. Here, the plaintiffs allege that their vehicles were ticketed without basis as a result of pressure by high City officials to issue tickets to raise revenue. This allegation certainly would permit plaintiffs to prove, if prove they can, that some or all of the defendants instructed enforcement personnel to issue baseless tickets or knowingly acquiesced in that practice, either of which would satisfy *Zinermon.* As the complaint may not be dismissed unless it is clear that plaintiffs can prove no facts that would entitle them to relief,[5] the Court cannot conclude at this stage that *Parratt* would require dismissal of this claim even if the claim is based on procedural due process rather than the Fourth Amendment.[6]

---

**3.** *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (procedural due process claim under Section 1983 sufficient notwithstanding availability of overlapping state remedies); *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (finding failure to state claim because meaningful remedies existed in satisfaction of procedural due process requirements); *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (finding failure to state claim because meaningful remedies existed in satisfaction of procedural due process requirements); *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (finding failure to state procedural due process claim because available remedies were adequate to satisfy due process).

**4.** In its lone post-*Albright* decision dealing with the question, the Second Circuit held that a constitutional malicious prosecution tort, at least in circumstances involving an arrest and criminal prosecution, must be analyzed under the Fourth Amendment. *Singer v. Fulton County Sheriff,* 63 F.3d 110, 115 (2d Cir.1995). *Singer,* however, did not deal with the question presented here, which is the source of the constitutional tort based on the wrongful institution of civil or administrative proceedings (*see* N.Y. Veh. & Traffic L. § 155) to impose parking fines.

**5.** *Conley v. Gibson,* 355 U.S. at 45–46, 78 S.Ct. at 101–102.

**6.** Plaintiffs' allegations of systemic pressure to misuse parking tickets to raise revenue distinguish this case from those in which this Court has dismissed Section 1983 claims relating to the parking violations system on the basis of *Parratt.*

Having concluded that *Parratt* does not require dismissal of Count I at the pleading stage, the question remains whether Count I states a claim upon which relief may be granted. The defendants claim that it does not because it fails to allege that the underlying proceedings, the alleged parking violations, were terminated in plaintiffs' favor.

Prior to *Albright,* the Second Circuit held that the elements of the constitutional tort analogous to malicious prosecution would be borrowed from the state law cause of action. *See Raysor v. Port Authority of New York and New Jersey,* 768 F.2d 34, 39 (2d Cir. 1985), *cert. denied,* 475 U.S. 1027, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986). It has continued to do so. *Cook v. Sheldon,* 41 F.3d 73, 79 (2d Cir.1994); *see Singer v. Fulton County Sheriff,* 63 F.3d 110, 115–118 (2d Cir.1995). In consequence, the Court looks to New York law to determine the sufficiency of this claim.

■ In order to state a malicious prosecution claim under New York law, the plaintiff must allege that (1) the defendant commenced a criminal proceeding[7] against the plaintiff, (2) the proceeding was terminated in plaintiff's favor, (3) the defendant lacked probable cause to believe plaintiff guilty of the crime charged, and (4) the defendant acted with malice. *E.g., Cook,* 41 F.3d at 79. This complaint does not specifically allege that parking violation charges were terminated in favor of these plaintiffs and, in consequence, fails to allege an essential element of the tort. Count I therefore must be dismissed. Plaintiffs, however, have cross-moved for leave to amend to allege favorable terminations, and that motion should be granted unless defendants' other attacks on Count I would require dismissal even if this claim were so amended.

Defendants' other contentions relating to Count I revolve about the fact that the issuance of the parking tickets is only the first step in a process that does not deprive plaintiffs of anything until after a hearing.

■ They contend first that the availability of PVB hearings and other State remedies not only precludes a procedural due process claim under *Parratt,* but also requires dismissal because the hearing and other remedies are all the process that plaintiffs are due. But a claim sounding in malicious prosecution does not focus solely on the deprivation of liberty or property that occurs in the event of conviction. The focus is on the harm of being subjected to wrongful legal process in the first instance, PROSSER § 119, at 870, and may include the time lost and inconvenience caused by defending the action. *Albright,* —— U.S. at ——, 114 S.Ct. at 818 (Kennedy, J., concurring). Hence, the lack of any deprivation prior to a hearing does not defeat plaintiffs' malicious prosecution claim.

■ Defendants next argue that the essence of the complaint is a claim of bias on the part of parking violations personnel and that complaints of bias must be pleaded with a specificity lacking here. They cite *Fariello v. Rodriguez,* 148 F.R.D. 670, 683 (E.D.N.Y.), *aff'd,* 22 F.3d 1090 (2d Cir.1994), and *New York State Inspection, Security and Law Enforcement Employees v. New York State Public Employment Relations Board,* 629 F.Supp. 33, 30 (N.D.N.Y.1984). Even assuming that those decisions may be reconciled with FED.R.CIV.P. 8 and 9(b) and the *Leatherman* decision, however, they would not require dismissal here. In light of *Cook* and other such cases, all that is necessary to Count I is the allegation of facts supporting each of the elements of a claim for malicious prosecution. Save for the deficiency with respect to favorable termination, this complaint does so.

*Cf. Liebers v. Parking Violations Bureau,* No. 93 Civ. 7001 (RWS), 1994 WL 119186 (S.D.N.Y. Apr. 4, 1994); *DeYoung v. City of New York,* 607 F.Supp. 1040, 1042–43 (S.D.N.Y.1985).

7. New York has decriminalized parking violations, N.Y.VEH. & TRAFFIC L. § 155, and it therefore might be argued that baseless parking tickets cannot give rise to a cause of action for malicious prosecution. The defendants, however, have not raised the point. It appears, moreover, that New York would regard these proceedings as partaking sufficiently of the characteristics of criminal matters to support malicious prosecution charges. *See Manti v. New York City Transit Authority,* 165 A.D.2d 373, 568 N.Y.S.2d 16, 21 (1st Dept.1991) (wrongful issuance of traffic citations sufficient to support malicious prosecution claim).

Accordingly, Count I of the complaint is dismissed. Plaintiffs' cross-motion to amend to allege favorable termination, however, is granted.

*Towing*

■ The complaint asserts that (a) vehicles are towed for no apparent reason despite compliance with all applicable laws (¶ ¶ 31(b), 41), and (b) parking enforcement personnel do not comply with City rules requiring the release of vehicles in certain circumstances after they are hooked to tow trucks but before they are removed to the pound (¶ 36a). Their brief argues, in addition, that the PVB's record keeping is atrocious, which results in the towing of vehicles based on the alleged failure to pay prior fines when in fact the prior fines have been paid.[8] (*See* Pl.Br. 19, 21) In these latter circumstances, plaintiffs appear to argue, they are entitled to a hearing before a vehicle is towed for alleged nonpayment of prior fines. (*See id.* 21–22)

The claim of arbitrary towing of plaintiffs' vehicles is not coextensive with the claim that the City issues parking tickets without any colorable justification, as the former involves a deprivation of the use of the vehicle without any hearing at all. The issuance of parking tickets, on the other hand, results in no deprivation without a hearing in the PVB. Nevertheless, the analysis is similar.

Plaintiffs argue that the seizure of their vehicles without any colorable basis for doing so is the sort of arbitrary governmental action that runs afoul of the substantive component of the due process clause. (Pl.Br. 8–9) But *Albright* is fatal to this argument. Un-

reasonable seizures by State actors are a subject of the Fourth Amendment, which is made applicable to the States by the Fourteenth Amendment. Just as substantive due process cannot ground a malicious prosecution claim because that subject is dealt with more specifically by other constitutional guarantees, so substantive due process cannot form the basis for an unreasonable seizure claim. *See Singer,* 63 F.3d 110, 117.

To the extent the arbitrary towing grievance rests on a claimed denial of procedural due process, the Court again must consider the impact of *Zinermon* and *Parratt.* While the Court assumes that a requirement of hearings prior to the towing of illegally parked vehicles would be entirely unworkable lest the City's traffic grind to a complete halt, and in excess of the requirements of the Constitution,[9] that is not the end of the matter. The complaint alleges that the practice complained of exists at the instance, or at least with the knowing acquiescence, of high City officials. It suggests that appropriate training and guidance would eliminate or substantially reduce such occurrences. In consequence, *Zinermon* is satisfied, if indeed it must be.[10] Hence, the contention that the City tows vehicles for alleged parking violations when in fact there is no basis for such charges states a claim upon which relief may be granted.

The plaintiffs' contention that vehicles often are towed on the ground that fines for prior parking violations have not been paid, when in truth the supposedly outstanding tickets either have been satisfied, dismissed

8. There is no contention that plaintiffs are entitled to a hearing or other process before the towing of vehicles that allegedly are parked illegally.

9. *See Dixon v. Love,* 431 U.S. 105, 112–15, 97 S.Ct. 1723, 1727–29, 52 L.Ed.2d 172 (1977) (adjudicative hearing unnecessary prior to driver's license suspension based on repeated traffic convictions); *cf. Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

10. It is at least debatable whether one need reach the *Zinermon* question with respect to the arbitrary towing claim. First, the baseless towing contention may be grounded in the Fourth and Fourteenth Amendments, in which case *Parratt* would have no bearing. *Zinermon,* 494 U.S.

at 125, 110 S.Ct. at 983; *see DeYoung,* 607 F.Supp. at 1043. Second, *Parratt* holds that there is no due process violation for random and unauthorized acts for which the State provides an adequate post-deprivation remedy. While it stands to reason that any such payments would be refunded in the event of dismissal of the illegal parking charge and, indeed, a PVB official so stated in an affidavit submitted ten years ago in another case, *DeYoung,* 607 F.Supp. at 1045, the City ordinance and regulations with respect to towing make no provision for refunds. Nor has the City submitted on this motion any proof of its current practice. In consequence, it is at least possible that there is an issue as to the existence of any post-deprivation remedy with respect to removal, release and storage fees.

or remain pending, presents essentially the same questions save with respect to the feasibility of and need for a predeprivation hearing. It is important to recognize that where the ostensible reason for towing the vehicle is an unpaid fine, the vehicle is parked legally at the time it is towed. There is no immediate need to remove it in the interest of decreasing traffic congestion. Further, the Due Process Clause may well require notice and some opportunity to be heard before one is deprived of the use of one's vehicle for alleged nonpayment of a prior fine particularly if, as plaintiffs allege, the PVB's record keeping is so deficient that vehicles frequently are towed on this basis despite the lack of any unpaid judgments. *See Dixon v. Love,* 431 U.S. at 112–15, 97 S.Ct. at 1727–29; *Wilson v. City of New Orleans,* 479 So.2d 891, 899–902 (La.1985); *cf. Blum v. Koch,* 716 F.Supp. 754 (S.D.N.Y.1989). In view, however, of the fact that the complaint alleges enough to satisfy *Zinermon* with respect to this claim for the reasons discussed above, the Court need not determine this question, at least at this point in the litigation.

Plaintiffs' other grievance with respect to towing relates to the City's response to the predicament of the motorist who returns to his or her vehicle just after it has been hooked to a tow truck but before it has been towed to the pound. Section 4–08(9)(ix) of the regulations provides in relevant part:

> "When a vehicle has been hooked to a tow truck in preparation for removal ... but the owner or other person lawfully entitled to possession of such vehicle appears and requests the release of such vehicle before the tow truck is in motion, such vehicle *shall be unhooked and released,* provided, however, that the person to whom such vehicle is released must execute a binding agreement consenting to pay the vehicle release penalty [$75] ... within thirty days from the date of such agreement and, in the event of non-payment, to the imposition of additional penalties ...". NYC Rules § 4–08(9)(ix) (emphasis added).

It is plaintiffs' position that tow truck personnel routinely refuse to release vehicles as required by this regulation and, as with all their other complaints, that these refusals take place pursuant to instructions or a policy designed to maximize City revenues.[11]

The plaintiffs' vehicles are property within the meaning of the Due Process Clause. *Frier v. City of Vandalia, Ill.,* 770 F.2d 699, 700 (7th Cir.1985); *see Blum,* 716 F.Supp. at 757. The government therefore may not deprive plaintiffs of their use, even temporarily, except to the extent consistent with the Constitution. *E.g., Fuentes v. Shevin,* 407 U.S. 67, 84–85, 92 S.Ct. 1983, 1996–97, 32 L.Ed.2d 556 (1972). While courts must guard against the temptation to expand the limits of substantive due process, it is no stretch to say that the City's allegedly deliberate failure to comply with its own regulations, if proved, would be the sort of arbitrary governmental action proscribed by the Due Process Clause. *See, e.g., Collins v. City of Harker Heights, Texas,* 503 U.S. 115, 124–28 n. 10, 112 S.Ct. 1061, 1068–70 n. 10, 117 L.Ed.2d 261 (1992). In consequence, this claim too withstands challenge.

### Adjudicative Procedures

The gravamen of Count III of the complaint is the charge that the adjudicative process before the PVB hearing examiners is fundamentally unfair. The examiners are said routinely to sustain tickets in the face of overwhelming evidence favoring the respondent, systematically to refuse requests to subpoena the enforcement officers who issued tickets in question, and to ignore the requirement of substantial credible evidence in order to convict.

If this were the entirety of Count III, it would be insufficient. The determinations by PVB hearing examiners are expressly made reviewable in the State courts in Article 78 proceedings. The Second Circuit has held that the availability of Article 78 review of administrative determinations requires dismissal under *Parratt* of claims of procedural due process deprivations before administra-

---

**11.** The $75 vehicle release penalty is half the $150 removal fee. Hence, the City's gross revenues are enhanced by such refusals. Whether its net revenues are enhanced is, at this point, a matter of speculation.

tive decision makers. *E.g., Campo v. New York City Employees' Retirement System,* 843 F.2d 96, 100–03 (2d Cir.), *cert. denied,* 488 U.S. 889, 109 S.Ct. 220, 102 L.Ed.2d 211 (1988); *see also Blum,* 716 F.Supp. at 762. Indeed, it appears that Article 78 relief in fact has been granted in the State courts in appropriate cases. *E.g., Matter of Heisler v. Atlas,* 69 Misc.2d 911, 331 N.Y.S.2d 131 (Sup. Ct.N.Y.Co.1972). But Count III goes beyond alleging that hearing examiners make random and unauthorized errors in individual cases. Rather, paragraph 34 of the complaint, which is incorporated by reference in Count III, alleges that "[t]hese deprivations result from defendants' instructions to ... hearing examiners ... that summonses contribute substantial revenues to the City of New York and defendants' pressure for these individuals to misuse their power for the purpose of raising revenue." (*See also* cpt ¶¶ 61–63) Nor is the assertion utterly bereft of all support although, to be sure, it is not supported by evidentiary detail.

As noted above, the Commissioner of Finance, the chief revenue collecting official of the City, appoints and, since 1994, has occupied the office of the director of the PVB. The PVB director appoints the hearing examiners. Thus, those responsible for adjudicating charges of parking violations are appointees, directly or indirectly, of the official charged with collecting City revenues. While plaintiffs do not allege that this institutional structure independently violates their right to a neutral decision maker, *but see Ward v. Village of Monroeville,* 409 U.S. 57, 61–62, 93 S.Ct. 80, 83–84, 34 L.Ed.2d 267 (1972), *Wilson v. City of New Orleans,* 479 So.2d at 901–02, this fact lends at least some circumstantial support to plaintiffs' allegation by suggesting that the hearing examiners may have reason to be receptive to pressures of the sort plaintiffs allege that defendants have brought to bear.

In these circumstances, the Court will not dismiss Count III under *Parratt.* It cannot be said at this early stage that plaintiffs will be unable to establish facts sufficient to bring this claim within *Zinermon.*

### Appellate Procedures

Plaintiffs' contention, in Count IV, that they frequently are prevented from appealing within the PVB because the Bureau requires submission of a canceled check or other proof of payment of the fine at issue as a precondition to entertaining an appeal lends itself to much the same analysis. If indeed the Bureau has raised a hurdle to appellate review inconsistent with procedural due process, the plaintiffs have a remedy under Article 78. The assertion that the hurdle is the product of a deliberate decision, or of knowing acquiescence, by senior officials motivated by a desire to foreclose appeals to increase revenue, however, brings the claim within *Zinermon.* [12]

### Record Keeping

The complaint's final count alleges in substance that plaintiffs are denied due process because the PVB does not comply with New York State and City statutory requirements that it maintain "complete and accurate records relating to all charges and dispositions." This allegedly results in a variety of misfortunes befalling plaintiffs and their vehicles as enforcement personnel act on the mistaken premise that prior tickets have gone unpaid. This record keeping deficiency is said to be required, promoted, endorsed and/or condoned by the defendants and to be "designed to achieve a purpose other than that authorized by law." (Cpt ¶¶ 61–63)

It is not for the Court in ruling on a motion to dismiss pursuant to Rule 12(b)(6) to judge the credibility of the plaintiffs' allegations. Plaintiffs and their counsel, as officers of the Court, have asserted in substance

---

12. The Court notes, however, the care with which this aspect of the complaint is drawn, as it implies that there is less to the claim than meets the eye. Plaintiffs assert that the PVB requires "proof of payment of the fine, *such as* a canceled check." (Cpt ¶ 53) (emphasis added) The requirement is said frequently to preclude appellate review because canceled checks often are not available within the thirty days within which

a notice of appeal may be filed. The complaint leaves open the possibility that plaintiffs might pay fines in cash or by certified check and obtain receipts at the time of payment, thus enabling them to file timely appeals. As all permissible inferences must be drawn in plaintiffs' favor at this stage, however, that point must await further development.

# 1076

that the PVB deliberately fails to keep accurate records because that enables it to increase revenues by, among other things, imposing multiple fines for the same offense and charging interest and penalties for nonpayment of fines that, in fact, have been paid. The Court therefore is obliged to accept the truth of that assertion for purposes of this motion. Assuming its truth, the Court holds that the claim that additional sanctions are imposed on plaintiffs in these circumstances comes within *Zinermon* and states a claim upon which relief may be granted.

### Individual Liability

Finally, defendants argue that the complaint does not allege the personal involvement of the four defendants sued in their individual capacities and therefore should be dismissed as to them. An officer must have been personally involved in the alleged misconduct to be liable under Section 1983. *Monell*, 436 U.S. at 691–95, 98 S.Ct. at 2036–38, *Al–Jundi v. Rockefeller*, 885 F.2d 1060, 1065 (2d Cir.1989). Personal involvement exists if the officer promulgated an unconstitutional policy that foreseeably resulted in the alleged deprivation, or learned of a violation but failed to remedy the problem. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994).

Plaintiffs allege that these defendants were responsible either for promulgating the alleged policies or for deliberately permitting subordinates to pursue them. Personal involvement thus has been alleged.

### Conclusion

The complaint, insofar as it is brought on behalf of plaintiff CAUTION, is dismissed in its entirety for lack of standing. Count I is dismissed for failure to state a claim upon which relief may be granted, but defendants' motion to dismiss is denied in all other respects. The motion for leave to amend the complaint is granted to the extent, and only to the extent, that plaintiffs may (1) amend Count I to allege the favorable termination of proceedings that are the subject of their malicious prosecution claim, (2) add any other members of CAUTION as parties plaintiff, and (3) drop any of the assertions previously made. Any such amended complaint shall be filed with the Clerk of the Court no later than thirty days following the date of this order. The parties are directed to appear in Courtroom 12D on October 16, 1995 at 2:00 p.m. for a pretrial conference.

SO ORDERED.