[Cite as *Tate v. Garfield Hts.*, 2013-Ohio-2204.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99099**

## McKINLEY TATE, III

PLAINTIFF-APPELLANT

vs.

## CITY OF GARFIELD HEIGHTS, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-742640

**BEFORE:** E.T. Gallagher, J., Keough, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** May 30, 2013

**ATTORNEYS FOR APPELLANT**

Patrick J. Perotti
James S. Timmerberg
Dworken & Bernstein Co., L.P.A.
60 South Park Place
Painesville, Ohio   44077


**ATTORNEYS FOR APPELLEES**

**For City of Garfield Heights**

Timothy J. Riley
Prosecuting Attorney
City of Garfield Heights
5407 Turney Road
Garfield Heights, Ohio   44125

James A. Climer
John T. McLandrich
John D. Pinzone
Frank H. Scialdone
Mazanec, Raskin & Ryder Co., L.P.A.
100 Franklin's Row
34305 Solon Road
Solon, Ohio   44139

**For Redflex Traffic Systems, Inc.**

James P. Schuck
Sommer L. Sheely
Quintin F. Lindsmith
Bricker & Eckler, L.L.P.
100 South Third Street
Columbus, Ohio   43215

EILEEN T. GALLAGHER, J.:

{¶1}   Plaintiff-appellant, McKinley Tate, III ("Tate"), appeals the dismissal of his complaint against defendants-appellees, city of Garfield Heights ("Garfield Heights" or "the City") and Redflex Traffic Systems, Inc. ("Redflex") (collectively "appellees"), for failure to state a claim.   We find no merit to the appeal and affirm.

{¶2} In November 2009, Garfield Heights enacted Garfield Heights Ordinances 313.11 ("the Ordinance"), which provided automated photo enforcement of red light and speed violations within the City.   Under the Ordinance, a civil fine was imposed on the owner of any vehicle detected by one of the cameras to have been operating a motor vehicle in violation of the Ordinance.   If a vehicle violated the Ordinance, the system generated a "Notice of Liability," which was mailed to the owner of the vehicle apprising him that he must pay a $100 civil penalty or oppose the alleged violation within 15 days of receiving the Notice of Liability. The recipient of a Notice of Liability could request a hearing to contest the citation.   A recipient who requested a hearing was required to submit the $100 fine as a hearing bond and a $50 administrative fee.   These amounts were refunded to the owner if the vehicle owner's challenge was successful.

{¶3} The Garfield Heights Police Department administered and enforced the Ordinance.   Garfield Heights contracted with Redflex, a third-party vendor, to install and operate the cameras and systems used to detect violations. Although the City was responsible for enforcing violations, Redflex performed administrative functions,

including processing, encrypting, and storing the video and photographs of violations and sending these images to the City for review.

{¶4} Tate received three Notices of Liability in July, August, and September 2010 for violating the Ordinance. In October 2010, he submitted a written request for review of his Notices of Liability along with the $150 hearing fee. Although Garfield Heights initially informed Tate that he would be afforded a hearing, the City later informed him that the three Notices of Liability had been dismissed and that the Ordinance had been repealed by a voter referendum. Garfield Heights refunded Tate's $150 fee, but Tate refused to accept it.

{¶5} On December 2, 2010, Tate filed a class action complaint against Garfield Heights for claims relating to the Ordinance. Tate later amended the complaint and alleged that Garfield Heights improperly assessed fines and other fees against him and other members of the class in violation of their constitutional rights to due process and equal protection of the law. In his amended complaint, Tate asserted claims against Redflex for conspiracy to violate the constitutional rights of class members. In a second amended complaint, Tate added two counts for disgorgement and unjust enrichment.

{¶6} Tate's challenge argues that the Ordinance violated his due process and equal protection rights because (1) it required the posting of a refundable $100 hearing bond and $50 administrative fee prior to obtaining a hearing, and (2) appellees allegedly failed to erect signs required by the Ordinance. Tate seeks to represent a class of all people

who ever paid fines under the Ordinance and to obtain disgorgement of all fines ever paid.

{¶7} Garfield Heights filed a motion for judgment on the pleadings arguing that Tate's second amended complaint should be dismissed for failure to state a claim because: (1) Tate lacks standing; (2) Tate's claims are moot; and (3) Garfield Heights is immune from liability. Redflex also filed a motion to dismiss for failure to state a claim, arguing that Tate lacked standing and that his claims were moot. Redflex also argued that, as a private entity, it could not be liable for constitutional violations and, in any case, there were no constitutional violations. The trial court granted both motions without opinion. Tate now appeals and raises ten assignments of error.

**Standard of Review**

{¶8} We review an order dismissing a complaint for failure to state a claim for relief de novo. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44. When reviewing a Civ.R. 12(B)(6) motion to dismiss, we must accept the material allegations of the complaint as true and make all reasonable inferences in favor of the plaintiff. *Johnson v. Microsoft Corp*., 106 Ohio St.3d 278, 280, 2005-Ohio-4985, 834 N.E.2d 791. However, "[unsupported conclusions of a complaint are not considered admitted * * * and are not sufficient to withstand a motion to dismiss." *State ex rel. Hickman v. Capots*, 45 Ohio St.3d 324, 324, 544 N.E.2d 639 (1989). To prevail on the motion, it must appear from the face of the complaint that the plaintiff can prove no set of

facts that would justify a court granting relief. *O'Brien v. Univ. Comm. Tenants Union, Inc.*, 42 Ohio St.2d 242, 245, 327 N.E.2d 753 (1975).

{¶9} We also apply a de novo standard of review to a trial court's decision on a motion for judgment on the pleadings filed under Civ.R. 12(C). *Chromik v. Kaiser Permanente*, 8th Dist. No 89088, 2007-Ohio-5856, ¶ 6. Granting a judgment on the pleadings is appropriate where the plaintiff has failed to allege a set of facts that, if true, would establish the defendant's liability. *Walters v. First Natl. Bank of Newark*, 69 Ohio St.2d 677, 679, 433 N.E.2d 608 (1982). And, similar to a motion to dismiss, the factual allegations of the complaint are taken as true, but unsupported conclusions are insufficient to withstand the motion. *Moya v. DeClemente*, 8th Dist. No. 96733, 2011-Ohio-5843, ¶ 10.

### Standing and Due Process

{¶10} We find Tate's third assignment of error dispositive of this appeal. Tate argues the trial court erred in dismissing his complaint for lack of standing. He contends that because Garfield Heights continues to hold his $150 hearing fee, he has standing to pursue his claims even though the City sent him a check refunding his money and the people of Garfield Heights repealed the Ordinance by referendum weeks before he filed his first complaint.

{¶11} Standing is a jurisdictional prerequisite that must be resolved before reaching the merits of a suit. *Fed. Home Loan Mtge. Corp. v. Schwartzwald* 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, ¶ 23. To establish standing, the party

invoking the court's jurisdiction must establish that he suffered (1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct, and (3) is likely to be redressed by the requested relief. *Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 22, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

{¶12} To have standing, a plaintiff must have a personal stake in the outcome of the controversy and have suffered some concrete injury that is capable of resolution by the court. *Middletown v. Ferguson*, 25 Ohio St.3d 71, 75, 495 N.E.2d 380 (1986). It is not sufficient for the individual to have a general interest in the subject matter of the action. The plaintiff must be the party who will be directly benefitted or injured by the outcome of the action. *Shealy v. Campbell*, 20 Ohio St.3d 23, 24, 485 N.E.2d 701 (1985). The purpose behind this "real party in interest rule" is "'* * * to enable the defendant to avail himself of evidence and defenses that the defendant has against the real party in interest, and to assure him finality of the judgment, and that he will be protected against another suit brought by the real party at interest on the same matter.'" *Id.*, quoting *In re Highland Holiday Subdivision*, 27 Ohio App.2d 237, 240, 273 N.E.2d 903 (4th Dist.1971).

{¶13} In their motions to dismiss, appellees argued that Tate lacked standing to pursue his claims because, according to the second amended complaint, Garfield Heights dismissed the charges against him, refunded his money, and repealed the Ordinance under which he was charged before he filed his complaint. In support of this argument,

appellees relied on two recent federal cases: *Hoekstra v. Arnold*, E.D.Mo. No. 4:08CV0267 TCM, 2009 U.S. Dist. LEXIS 7465 (Feb. 3, 2009), and *Gutenkauf v. Tempe*, D.Ariz. No. CV-10-02129-PHX-FJM, 2011 U.S. Dist. LEXIS 51748 (May 4, 2011). Tate contends these cases are distinguishable and inapplicable.

{¶14} In *Hoekstra*, the plaintiffs were charged with violating a local traffic ordinance after automated enforcement cameras detected and photographed them failing to stop at red lights at various intersections within the city of Arnold, Missouri. Each plaintiff received a Notice of Violation, which included a summons to appear in court. However, the city of Arnold dismissed the charges against the *Hoekstra* plaintiffs after their attorney requested a trial.

{¶15} The *Hoekstra* plaintiffs filed a complaint against the city of Arnold, numerous city officials, and American Traffic Solutions, Inc., which provided the automated enforcement cameras, alleging violations of due process, civil rights, and conspiracy to violate plaintiffs' constitutional rights. The defendants moved to dismiss the complaint for failure to state a claim on grounds that the plaintiffs lacked standing. The defendants argued that the plaintiffs lacked standing because they failed to demonstrate that they suffered an actual injury since their traffic cases were dismissed.

{¶16} The *Hoekstra* plaintiffs countered that they sufficiently pleaded an actual injury because they alleged that, as a result of the defendants' conduct, they were "'damaged in that they were charged with and forced to defend a red light [camera ordinance] violation * * *, suffered embarrassment, humiliation, and inconvenience[, and

were] forced to hire attorneys and expend money for attorney's fees and costs.'" *Hoekstra* at *17.

{¶17} In dismissing the complaint, the United States District Court found the allegations were insufficient to demonstrate the *Hoekstra* plaintiffs, whose Notices of Violation had been dismissed, had standing to pursue their claims. The federal court explained:

> None of the allegations demonstrate those Plaintiff [sic] are now or will in the immediate future be the subject of another Notice of Violation. Furthermore, no allegation intimates that, to obtain the dismissal, these Plaintiffs lost their liberty in any manner or had to pay or paid City any money. Additionally, there is no allegation indicating that these Plaintiffs were improperly treated differently than others who may be subject of Red Light Camera Ordinance violations. Therefore, there is no indication that the Hoekstra Plaintiffs suffered a concrete or particularlized injury in fact that is actual or imminent as a result of the Ordinance and Notices of Violation served on them.

{¶18} Although Tate paid $150 as bond for a hearing, a hearing was never held before the traffic violations against him were dismissed and the money was returned. Therefore, like the *Hoekstra* plaintiffs, Tate was not required to pay any money to obtain the dismissal.

{¶19} In *Gutenkauf*, D.Ariz. No. CV-10-02129-PHX-FJM, 2011 U.S. Dist. LEXIS 51748 (May 4, 2011), the court reached a similar conclusion. Gutenkauf was charged with violating a local traffic ordinance after an automated enforcement camera detected him speeding. Following a hearing, the court found Gutenkauf responsible for the violation and assessed him $171 fine, plus $26 for service of process costs. Gutenkauf

appealed the violation, and the Superior Court of Arizona reversed and dismissed the charges against him. As a result, the city of Tempe refunded Gutenkauf's payment in full.

{¶20} Gutenkauf thereafter filed a notice of claim with the city of Tempe pursuant to state statute and demanded $699 to settle the claim. The city accepted. However, after the city twice attempted to send Gutenkauf a check, Gutenkauf refused to sign a release and returned the check.

{¶21} Gutenkauf later filed a complaint in the federal district court against the city of Tempe, numerous city officials, and Reflex Traffic Systems, which installed and operated the automated enforcement cameras. In his complaint, he asserted various civil rights violations under 42 U.S.C. 1983 and violations of his constitutional rights under the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution. He also asserted conspiracy and RICO violations. The defendants filed motions to dismiss for failure to state a claim.

{¶22} In dismissing Gutenkauf's complaint, the court found that he lacked standing because he successfully appealed a finding of responsibility, was refunded his money, and voluntarily chose to forego the city's acceptance of his offer. As a result, the court concluded, he suffered no harm and there was no longer a case or controversy. *Id.* at *7.

{¶23} Here, the Ordinance Tate challenges was never applied to him. In his second amended complaint, he concedes that all three of his Notices of Liability were dismissed one month before he filed his lawsuit and two weeks after the Ordinance was

repealed by the voters. Tate even attached to his complaint the letter he received from the City informing of the dismissals. Thus, Tate was never found to have violated the Ordinance. And because the Ordinance has been repealed, there is no risk that he could be subjected to the Ordinance in the future.

{¶24} Tate contends that because he did not accept the City's $150 refund, the City's tender of the check is a nullity and does not moot any of his claims. In support of his argument, Tate cites *Weisenbach v. Safeway Aluminum Constr. Co.,* 5th Dist. No. 87-CA-2, 1987 Ohio App. LEXIS 7854 (July 6, 1987), and *Charles v. Lawyers Title Ins. Corp.*, D.N.J. No. 06-2361 (JAG), 2007 U.S. Dist. LEXIS 48212 (July 3, 2007).

{¶25} In *Charles*, the defendant overcharged plaintiffs for title insurance. Plaintiffs filed a class action complaint alleging violations of the New Jersey Fraud Act, fraudulent and negligent misrepresentation, and unjust enrichment. The defendant moved to dismiss the complaint, arguing that the plaintiffs lacked standing and there was no actual case or controversy because the defendant tendered the full amount of the plaintiffs' individual damages before the complaint was filed but the plaintiffs rejected it. In overruling the defendant's motion, the *Charles* court explained:

> Here, the offer to repay the overcharge, alone and without acceptance, is insufficient to show that Plaintiffs lack standing. At the time the offer was made, prior to the filing of the Complaint, Defendant had no way of knowing whether the offer would satisfy Plaintiff's entire demand because there were no demands set forth.
>
> Indeed, the underlying basis for *Monsanto*, and other cases which moot claims based on offers of judgment, without acceptance, which fully satisfy the plaintiff's demands, *is that all the wrongs alleged in the Complaint will be righted*, to the full extent allowed, by the offer of settlement. * * *

Before the filing of the complaint, the wrongs that might be alleged are not subject to definition. Thus, Defendant's argument is that before an action commences, the unsolicited and unaccepted offer of settlement can defeat standing. This cannot be so. *Weisenbach* at * 10-11. (Emphasis added, citations omitted.)

**{¶26}** Thus, *Charles* is distinguishable from the instant case because the defendants in *Charles* tendered a check to settle Charles's potential undefined claims. Here, Garfield Heights merely attempted to return Tate's hearing fee because his violations were dismissed. It was not an offer to settle any undefined claims.

**{¶27}** We find *Weisenbach* equally inapplicable. In the two-paragraph opinion, the *Weisenbach* court states that "[w]hile the acceptance of such a check might well result in mootness and lack of a genuine justiciable issue, the mere 'tender' of a check does not do so." Although the opinion provides almost no facts regarding the parties' dispute, it is clear that the plaintiff suffered an injury in fact and that the "tendered" check was merely an offer of settlement. Here, Tate has not been injured, and the $150 refund check was not an offer of settlement but a return of Tate's hearing fee.

**{¶28}** Tate further argues that even though the bond was returned to him, the temporary loss of $150 is sufficient injury to state a claim for violation of due process. We disagree.

**{¶29}** Due process requires that an individual be given notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Fuents v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). To establish either a procedural or substantive due process claim, a plaintiff must first identify the constitutionally protected

interest of which he was deprived. *Bd. of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Here, Tate argues the seizure of his $150 hearing fee constitutes a constitutional deprivation underlying both procedural and substantive due process claims.

{¶30} In *Gutenkauf*, the court found that the plaintiff did not suffer a violation of substantive due process even though he paid a $171 fine, plus $26 for service of process costs before his violations were reversed on appeal. *Gutenkauf*, D.Ariz. No. CV-10-02129-PHX-FJM, 2011 U.S. Dist. LEXIS 51748 (May 4, 2011). Other courts have determined that an interest in not paying a relatively small fine is not a fundamental interest protected by due process. *See Idris v. Chicago*, N.D.Ill. No. 06 C 6085, 2008 U.S. Dist. LEXIS 3933 (Jan. 16, 2008).

{¶31} In *Gardner v. Cleveland*, 656 F.Supp.2d 751 (N.D.Ohio 2009), the Federal District Court for the Northern District of Ohio determined that the imposition of a $100 civil penalty for violating a traffic ordinance "does not implicate a fundamental right" protected by due process. Similarly, in *All Aire Conditioning, Inc. v. New York*, 979 F.Supp. 1010 (S.D.N.Y.1997), the court held that the court's retention of an individual's bond before a hearing does not implicate any constitutional interests. *Id.*, citing *Saharoff v. Stone*, 638 F.2d 90 (9th Cir.1980).

{¶32} Courts routinely require defendants to deposit a jury fee to pay for juries and other court expenses to obtain a jury trial. Courts have uniformly held that a jury trial fee does not deprive litigants of their federal constitutional rights to due process. *Hamilton*

*v. Ceasar*, 218 Ill.App.3d 268, 578 N.E.2d 221, 223 (Ill.App.1991); *Robertson v. Apuzzo,* 170 Conn. 367, 365 A.2d 824, 831 (Conn.1976). Accordingly, we find that the City's temporary retention of the $150 hearing deposit was not a due process violation.

{¶33} Finally, Tate argues that Garfield Heights improperly tried to moot his claims to preclude him from obtaining class action status. He cites *Deposit Guar. Natl. Bank v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980) in support of this argument. However, *Roper* involved the prohibition on a defendant mooting a case *after* the plaintiff moved to certify a class. Here, the people of Garfield Heights voted to repeal the Ordinance and Garfield Heights dismissed the citations weeks *before* Tate even filed his first complaint. Tate was never found to be in violation of the Ordinance. And because the City's temporary retention of the $150 hearing deposit was not a due process violation, the complaint fails to state a claim for any constitutional injury. Therefore, he suffered no harm and lacks standing to pursue any of the claims set forth in the second amended complaint.

{¶34} The third assignment of error is overruled.

{¶35} Having determined that Tate lacks standing to bring the claims set forth in the second amended complaint, we lack jurisdiction to consider the remaining assignments of error, which relate to the merits of Tate's claims.

{¶36} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

TIM McCORMACK, J., CONCURS (WITH SEPARATE CONCURRING OPINION); KATHLEEN ANN KEOUGH, P.J., CONCURS IN JUDGMENT ONLY WITH MAJORITY OPINION AND CONCURS WITH SEPARATE CONCURRING OPINION

TIM McCORMACK, J., CONCURRING:

{¶37} I concur with the majority that the trial court's judgment dismissing this case should be affirmed. Tate lacks standing to raise various constitutional issues regarding the City's traffic camera ordinance. Tate contends that, because Garfield Heights continues to hold his $150 hearing fee, he has standing to pursue his claims. He claims that, even though the City sent him a refund check, his rejection of the refund means there is still a justiciable issue, which gives him standing. The majority is correct that this claim lacks merit.

{¶38} Tate further argues that he has standing to sue because, even though the $150 hearing fee was returned to him, the temporary loss of $150 is a sufficient injury to provide him with standing to challenge a violation of his due process rights. The majority is correct that the City's collection of a $150 hearing fee, since refunded, does not give Tate standing to bring this case.

{¶39} Whether there was a constitutionally protected interest in Tate's temporary loss of $150 to give him standing in this case is a different issue than weighing the actual due process impact of the $100 fine plus $50 hearing cost mandated by the upfront "entry fee" charged to all citizen-vehicle owners who sought a hearing to inquire or challenge the computer-generated "Notice of Violation" that he or she receives from the city of Garfield Heights.

{¶40} As important as the effort would be to address the issue of whether this "entrance fee" is an unconstitutional affront to due process of law and whether in fact the $150 upfront fee is a noxious and an especially cynical maneuver to thwart access to all but the most comfortable to pursue their options, the citizens of Garfield Heights have made this exercise fully unnecessary. In the November 2, 2010 city-wide referendum, the citizens of Garfield Heights voted to dismantle and scrap the entirety of the camera violation ordinance, the subject matter of this litigation. Thus, we no longer need, for Garfield Heights at least, to deliberate the legality, equity, or intent of the $150 due process "entrance fee." That issue has been resolved for us in the most sacrosanct of democratic fashion — by the citizens of the City at their ballot box. The issues are therefore moot pursuant to the voice of citizen recision.